IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

CARROL D. ROBERSON                                                    PLAINTIFF

v.                                              CIVIL ACTION NO.: 3:12-CV-00018-GHD-SAA

MCDONALD TRANSIT ASSOCIATES, INC.                                     DEFENDANT

MEMORANDUM OPINION
DENYING PLAINTIFF'S MOTION TO STRIKE SUMMARY JUDGMENT EVIDENCE,[1]
DENYING PLAINTIFF'S MOTION FOR AN EVIDENTIARY HEARING,
AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Presently before the Court are the following: Plaintiff's motion to strike summary

judgment evidence [82], Plaintiff's motion for an evidentiary hearing [85], and Defendant's

motion for summary judgment [65]. After careful review of the motions, responses, attachments,

and entire record, the Court finds that Plaintiff's motion to strike [82] should be denied;

Plaintiff's motion for an evidentiary hearing [85] should be denied; and Defendant's motion for

summary judgment [65] should be granted.

*A. Factual and Procedural Background*

Plaintiff Carrol D. Roberson ("Plaintiff"), who is proceeding *pro se*, is a 71-year-old

retired pilot and aircraft mechanic who is attending classes at the University of Mississippi on a

senior scholarship program. This action arises out of alleged injuries sustained by Plaintiff while

riding an Oxford University Transit bus (the "bus") operated by Defendant McDonald Transit

Associates, Inc. ("Defendant"). Plaintiff alleges that while riding the bus on April 6, 2011 "a bus

---

[1] The full title of this document as it appears on the docket is Plaintiff's Objections to Defendant's
Summary Judgment Evidence and Motion to Strike Motion for Summary Judgment [82]. However, the sole request
made in the document is for the Court to strike a particular statement in Plaintiff's deposition from the summary
judgment record. Thus, the Court refers to this document throughout this opinion and corresponding order as
"Plaintiff's motion to strike summary judgment evidence [82]."

driver assistant" who was sitting two rows in front of Plaintiff on the opposite aisle named Jerry

Pegues ("Pegues") assaulted Plaintiff by striking him on his right knee four times with a closed

fist. Pl.'s Compl. [1] ¶ 17; Pl.'s Dep. [66-1] at 26. As a result of the alleged incident, Plaintiff

claims that he suffered serious injuries to his back and knee, as well as mental anguish. Pl.'s

Compl. [1] ¶ 17. Plaintiff also alleges that before the alleged assault he became concerned that

several bus drivers were driving unsafely and that there was inadequate bus maintenance; he

alleges he privately voiced his concerns to the general manager of the bus orally and via "

'confidential' written reports." *Id.* ¶¶ 8, 10. Plaintiff claims that Defendant "rejected outright"

his concerns, *id.* ¶ 8; "set out to destroy [Plaintiff] through whatever means available" and "to

force Plaintiff to discontinue riding [the bus]," *id.* ¶ 13; "creat[ed] fear [among bus drivers and

mechanics] that jobs would be lost if Plaintiff continued making complaints," *id.* ¶ 14; and

"through the rumor circle of drivers and friends of drivers, spread false and damaging rumors

against Plaintiff which included the assertions that Plaintiff is a 'Negro Hater,' a 'Homosexual

Hater,' and a felon," *id.* ¶ 15. Plaintiff further asserts that some of the bus drivers "began to

harass and intimidate Plaintiff while a passenger aboard the bus by partially closing the bus door

expecting Plaintiff to collide with it, accelerating the bus before Plaintiff had time to be seated,

and sometimes passing on by a bus stop where Plaintiff was waiting alone to catch the bus." *Id.*

¶ 16.[2]

   On April 5, 2013, Defendant filed a motion for summary judgment [65]. Plaintiff filed a

response, and Defendant filed a reply. Plaintiff then filed a motion for the Court to extend

---

[2] On January 18, 2013, Plaintiff filed a motion for leave [55] to file an amended complaint adding Defendant's parent company as a party. The Magistrate Judge denied the motion on the grounds that the request was untimely and the proposed amended complaint failed to suggest a basis for liability to Plaintiff on behalf of the parent company. *See* Order Denying Pl.'s Mot. Leave to File Am. Compl. [58] & Order Denying Pl.'s Mot. Recons. of Order Denying Mot. Leave [78].

discovery deadlines so that the parties could further engage in discovery prior to a ruling on the motion for summary judgment; the Court entered an Order [72] granting this request and deferring ruling on the motion for summary judgment until discovery was complete. On July 15, 2013, Plaintiff filed a motion for oral argument [79] on the motion for summary judgment. The Court subsequently entered an Order [80] granting this request and setting the hearing. On August 14, 2013, Plaintiff filed a motion [82] objecting to Defendant's summary judgment evidence and to strike the same. Subsequently, on August 27, 2013, Plaintiff filed an affidavit [84] in support of his motion to strike. Plaintiff then filed a motion for the Court to hold an evidentiary hearing [85] in order for three witnesses to provide oral testimony in the case. The Court heard oral argument on the motion for summary judgment on September 3, 2013.

### B. Summary Judgment Standard

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). *See* FED. R. CIV. P. 56(a); *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322, 106 S. Ct. 2548.

The party moving for summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record it believes

3

demonstrate the absence of a genuine dispute of material fact. *Id.* at 323, 106 S. Ct. 2548. Under Rule 56(a), the burden then shifts to the nonmovant to "go beyond the pleadings and by . . . affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S. Ct. 2548 (internal quotation marks omitted); *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001); *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995).

Where, as here, the parties dispute the facts, the Court must view the facts and draw reasonable inferences in the light most favorable to the nonmovant. *Scott v. Harris*, 550 U.S. 372, 378, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (internal citations omitted). "However, a nonmovant may not overcome the summary judgment standard with conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *McClure v. Boles*, 490 F. App'x 666, 667 (5th Cir. 2012) (per curiam) (citing *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007)).

## C. Analysis and Discussion

As an initial matter, the Court addresses Plaintiff's motion for an evidentiary hearing [85] to hear testimony from three witnesses who Plaintiff could not otherwise depose for financial reasons. Defendant has filed a response arguing that no provision under the Federal Rules of Civil Procedure allows such a hearing to supplement written discovery. The Court agrees and finds that Plaintiff's motion for an evidentiary hearing [85] should be denied. The Court next turns to Defendant's motion for summary judgment and addresses each of Plaintiff's claims as follows:

4

## 1. Negligence

Plaintiff asserts a negligence claim against Defendant on the theory that Pegues was an employee or agent of Defendant and that Defendant is vicariously liable for Pegues' alleged acts. "An employer may be liable for both negligent and intentional torts committed by an employee within the scope of his or her employment." *Mabus v. St. James Episcopal Church*, 884 So. 2d 747, 756 (¶ 18) (Miss. 2004) (citing *Odier v. Sumrall*, 353 So. 2d 1370, 1372 (Miss. 1978)). "To be within the scope of employment, the act must have been committed in the course of and as a means to accomplishing the purposes of the employment and therefore in furtherance of the master's business." *Adams v. Cinemark USA, Inc.*, 831 So. 2d 1156, 1159 (¶ 9) (Miss. 2002) (citing *Sears, Roebuck & Co. v. Creekmore*, 23 So. 2d 250, 252 (Miss. 1945); *Alden Mills v. Pendergraft*, 115 So. 713, 714 (Miss. 1928)).

Plaintiff has filed a separate document wherein he objects to the Defendant's reference of an alleged statement made by Plaintiff in his deposition that Pegues was not an employee or agent of Defendant for the reason that Defendant referenced this statement out of context, and requests that the Court strike this statement from its consideration of the summary judgment motion. *See* Pl.'s Mot. Strike Def.'s Summ. J. Evidence [82] & Pl.'s Aff. [84] at 1. Plaintiff maintains that whether Pegues is an employee or agent of Defendant is a factual dispute for the jury. In this document, Plaintiff further states that he cannot assemble proof to support his allegation that Pegues was an employee or agent of the Defendant because Defendant has been uncooperative and unresponsive to Plaintiff's discovery requests concerning this issue. Upon due consideration of Plaintiff's articulated concerns in this respect, the Court declines to strike the references in Plaintiff's sworn deposition testimony to whether Pegues was an employee or

5

agent of Defendant, but instead considers this portion of Plaintiff's deposition testimony as a part of the summary judgment record.

Plaintiff's position on Pegues' relationship with Defendant varies throughout the record. In Plaintiff's complaint, Plaintiff alleges that Defendant was negligent "for failure to exercise that reasonable and necessary degree of care that a reasonable and prudent person would exercise under the same or similar conditions in order to maintain a reasonably safe transit operation for passengers" and that "Plaintiff's assailant was, and is, unqualified to perform tasks for [the Defendant] or assume any responsibility whatsoever as a bus assistant." Pl.'s Compl. [1] ¶ 19. Plaintiff further alleges that Defendant's negligence proximately caused his injuries and damages. *Id.* ¶¶ 20–23. Thus, Plaintiff's complaint does not allege any facts that would support the existence of a principal-agent relationship between Defendant and Pegues; nor does Plaintiff allege that Pegues was an employee of Defendant. Similarly, in his deposition, he testifies that he had no reason to believe Pegues was working for Defendant on the date of the alleged incident and that no one had ever told him that Pegues was at any time an employee of Defendant. Pl.'s Dep. [68-1] at 40.

However, Plaintiff also testifies in his deposition that he was "convinced" at the time of the alleged incident that Pegues was an employee or agent of Defendant acting in the business interest and under Defendant's direction and control, because Pegues was always on the bus in the same seat and performed daily tasks on the bus, including giving instructions to bus drivers who were new on the routes, changing the bus signs, emptying the trash cans, and making walk-around inspections. Pl.'s Dep. [66-1] at 20, 41. And in Plaintiff's response to the motion for summary judgment, he argues that his "alleged assailant was / is an employee of the Defendant

6

or a bus assistant acting in the business interest and under the direction and control of the Defendant when the alleged incident [occurred]." Pl.'s Resp. to Def.'s MSJ [67] at 1. These theories are raised for the first time in Plaintiff's deposition and contradict his other statements. Plaintiff concedes that he has presented no proof of his allegations concerning Pegues' supposed connection with Defendant, but maintains that this is due to Defendant's lack of cooperation in responding to his discovery requests for information on the same. Pl.'s Mem. Br. Supp. Resp. Opp'n to Def.'s MSJ [68] at 1.

Defendant argues that Pegues was at all times only a passenger on the bus and that any cause of action for negligence would lie against Pegues as an individual and not Defendant. Defendant further maintains that Plaintiff admitted in his deposition that Pegues is not an employee or agent of Defendant, and that Defendant has responded to Plaintiff's discovery requests concerning Pegues' supposed relationship with Defendant by informing Plaintiff that Pegues has never been an employee or agent of Defendant.

In thoroughly reviewing the entire record, the Court finds that Defendant has reasonably responded to Plaintiff's discovery requests for information concerning the names and contact information for Defendant's employees. *See* Def.'s Responses to Pl.'s Second Set of Interrogs. & Requests [68-1] at 57–59. In addition, Defendant's general manager, Ron Biggs, has also stated in a sworn affidavit that "[a]t no time has [Pegues] ever been an employee, agent[,] or servant in any capacity of [Defendant]." Biggs Aff. [69-1] at 2. Also, at the hearing on the motion for summary judgment, Defendant consistently maintained that Pegues has never worked for Defendant in any capacity. Although the Court recognizes Plaintiff's belief that Pegues was in some way connected with Defendant, the Court finds that Plaintiff has not come forth with

7

any proof that a principal-agent relationship existed between Defendant and Pegues. Nor has he presented other evidence supporting his negligence claim premised on vicarious liability. Because Plaintiff has presented no proof that Pegues was at the time of the alleged incident an employee or agent of Defendant, his negligence claim must be dismissed as a matter of law.

## 2. Defamation

Second, Plaintiff asserts "Defendant acted with anger, hostility, [and] malice . . . by placing Plaintiff in a false light in the public eye" and "embarked upon a campaign of slander and libel in order to discredit Plaintiff." Pl.'s Compl. [1] ¶ 25; Pl.'s Dep. [66-1] at 42. Plaintiff further alleges that he was described in written and oral reports submitted to the Defendant's board of trustees "as a deviant and paranoid liar who was faking injuries for monetary gain" and that "[s]uch rumors were spread throughout the community causing great harm to Plaintiff." Pl.'s Compl. [1] ¶ 25. Defendant contends that Plaintiff has admitted that he cannot provide the names of any individuals who defamed him after Pegues was acquitted of the criminal charges Plaintiff had brought against him and further contends that Plaintiff's defamation claim fails as a matter of law.

Plaintiff argues that he has named several witnesses in his Rule 26 disclosures and subsequent supplementation to his disclosures. Plaintiff maintains that these witnesses include several of Defendant's employees and other individuals who are friends of the drivers and assistants, and that all of these witnesses made threats against Plaintiff and continue to intimidate and defame Plaintiff by their actions. Finally, Plaintiff argues that a code of silence exists among the management, employees, and others associated with Defendant which has prevented Plaintiff from amassing evidence to support his defamation claim.

8

To prove defamation under Mississippi law, a plaintiff must demonstrate the following elements: "(a) a false statement that has the capacity to injure the plaintiff's reputation; (b) an unprivileged publication, i.e., communication to a third party; (c) negligence or greater fault on part of publisher; and (d) either actionability of statement irrespective of special harm or existence of special harm caused by publication." *Speed v. Scott*, 787 So. 2d 626, 631 (¶ 21) (Miss. 2001). Plaintiff has not presented proof of any elements of his defamation claim other than his own statements of conjecture and suspicion that he has been targeted by Defendant. Such statements are not sufficient to carry his defamation claim past summary judgment. Thus, his defamation claim must be dismissed as a matter of law.

### 3. Invasion of Privacy

Third, Plaintiff alleges that Defendant invaded his privacy by "fostering activity intended to oppress [Plaintiff]" and "drive [him] from the bus." Pl.'s Dep. [66-1] at 42. Specifically, Plaintiff alleges that Defendant's general manager, Ron Biggs, played the audio and video recording of the alleged incident giving rise to this suit for the bus drivers, maintenance staff, office personnel, friends of the drivers, and maintenance personnel for entertainment, despite the recordings showing that "Plaintiff was in pain, excited, and hopping around on one leg" and that it "was a most painful and embarrassing time for Plaintiff." Pl.'s Compl. [1] ¶ 26; Pl.'s Dep. [66-1] at 44. Plaintiff further alleges that as a result, a few people have referred to him as "Red" or "Hopi" whenever he has boarded the bus. Plaintiff claims that all of this activity indicates a conspiracy of sorts between the management of Defendant and the Oxford Police Department to "[o]rchestrate[ ] a rumor circle" and "stalk[ ]" him. Pl.'s Dep. [66-1] at 45. Defendant argues

9

that Plaintiff has offered no proof to support his claim that Defendant caused an invasion of his privacy and thus that Plaintiff's invasion of privacy claim fails as a matter of law.

Plaintiff concedes that aside from his beliefs and feelings in this respect, he has no proof to support his invasion of privacy claim. However, he maintains that Defendant has been unresponsive and uncooperative with respect to Plaintiff's discovery requests and thus Plaintiff has no way of discovering information which would help him to further establish his invasion of privacy claim. The Court finds in its review of the record that Defendant has reasonably responded to Plaintiff's discovery requests concerning his allegations of invasion of privacy. Further, the Court finds, as Plaintiff concedes, that no proof has been presented to support his invasion of privacy claim. Accordingly, the same must be dismissed as a matter of law.

### 4. Violation of Due Process and Equal Protection

Finally, Plaintiff alleges that Defendant, while acting under color of law, intentionally and maliciously formed a conspiracy among subordinates and the Oxford Police Department to deny Plaintiff his First and Fourteenth Amendment rights, specifically by constructively denying him his right to ride the bus and by showing the film of the alleged incident to others. Defendant argues that Plaintiff's claim fails because Plaintiff has offered no evidence to support that he was ever denied access to riding the bus or that Defendant showed the film of the alleged incident to others.

Plaintiff concedes that "at no time did a [bus] driver refuse to allow the Plaintiff to board the bus." Pl.'s Mem. Br. Supp. Resp. Opp'n to Def.'s MSJ [68] at 3. Plaintiff also admits that whenever he has wanted to ride the bus he has been able to do so. Pl.'s Dep. [66-1] at 55. However, Plaintiff maintains that his First Amendment and Fourteenth Amendment rights have

10

been constructively denied by a few bus drivers who have refused to stop whenever Plaintiff was standing alone at a bus stop and have imposed thirty-minute delays upon Plaintiff whenever he has requested a transfer. Pl.'s Mem. Br. Supp. Resp. Opp'n to Def.'s MSJ [68] at 4. Plaintiff maintains that three of these drivers have either been terminated or resigned and that Defendant refuses to disclose their location. *Id.* With respect to the alleged publication of the film of the incident involving Plaintiff, Plaintiff has repeatedly stated that he believes that Defendant has shown the film to others, but has presented no proof to support his subjective belief.

"The Due Process Clause is only implicated when a person has a constitutionally protected interest in life, liberty, or property." *Conner v. Lavaca Hosp. Dist.*, 267 F.3d 426, 437 (5th Cir. 2001); *see Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985); *Bd. of Regents v. Roth*, 408 U.S. 564, 569, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972). The right to ride a university transit bus system has not been recognized either as a property right or liberty interest protected by the Constitution, *see, e.g., Ferris v. Univ. of Tex. at Austin*, 558 F. Supp. 536, 543 (W.D. Tex. 1983) (no property interest to ride a university transit bus), and Plaintiff has offered no authority for this Court to hold otherwise in this case. Plaintiff's allegations that he was subjected to thirty-minute delays at a bus stop and that he has occasionally been passed by as the sole person sitting at the bus stop do not rise to the level of a constitutional violation. Similarly, Plaintiff's allegation that Defendant showed the film of the alleged incident to others is not sufficient to support a constitutional violation claim, particularly without any proof except for Plaintiff's own subjective belief that the same occurred. Finally, Plaintiff has failed to present any other proof that would support his due process and equal

protection claims. For all these reasons, Plaintiff's due process and equal protection claims must be dismissed as a matter of law.

### D. Conclusion

In sum, Plaintiff's motion to strike summary judgment evidence [82] is DENIED; Plaintiff's motion for an evidentiary hearing [85] is DENIED; and Defendant's motion for summary judgment [65] is GRANTED, as no genuine dispute of material fact remains on Plaintiff's claims and judgment as a matter of law is proper.

A separate order in accordance with this opinion shall issue this day.

THIS, the _12_ day of November, 2013.

_____
SENIOR JUDGE